The UNITED STATES, Appellant,

v.

Paul M. W. BRUCKMANN, Appellee.

Paul M. W. BRUCKMANN,
Cross-Appellant,

v.

The UNITED STATES, Cross-Appellee.

Appeal Nos. 77–26, 77–30.

United States Court of Customs
and Patent Appeals.

Aug. 17, 1978.

Lane, J., filed a concurring opinion.

Miller, J., filed an opinion dissenting in part.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Glenn E. Harris, New York City, for the U. S.

Paul M. W. Bruckmann, pro se.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

The United States appeals from the order of the Customs Court, 78 Cust.Ct. 155, C.D. 4702, 435 F.Supp. 1219 (1977), granting plaintiff's (hereinafter Bruckmann) cross-motion for summary judgment on the basis of its holding that incandescent gas lamp parts are properly classified under item 653.30, Tariff Schedules of the United States (TSUS) rather than under residual item 653.39, TSUS. We reverse.

Bruckmann cross-appeals from the holding of the Customs Court that the cast iron "stems" or support posts of the lamps are not properly classified as "columns, pillars, or posts" under item 652.93. We affirm.

The merchandise described on the protest as "Victorian Street Lamps from England, Cast Iron Post, and Frog (iron connecting bracket between lantern and post)," was

1. Under the provisions of 653.39, lamp parts were dutiable at the rate of 19% ad valorem at the time of import.

2. Under item 652.93, the rate of duty for articles entered in 1968 is 2.5% ad valorem; for articles entered in 1970, the rate of duty is 2% ad valorem; for articles entered in 1971, the rate of duty is 1.5% ad valorem.

classified under item 653.39, TSUS.[1] Bruckmann (appellee/cross-appellant) urged that the merchandise be classified under item 653.30.

The relevant portions of the TSUS are as follows:

*Schedule 6, Part 3, Subpart F:*

Schedule 6, Part 3, Subpart F:
Hangars and other buildings, bridges, bridge sections, lockgates, towers, lattice masts, roofs, roofing frameworks, door and window frames, shutters, balustrades, columns, pillars, and posts, and other structures and parts of structures, all the foregoing of base metal:
    Of iron or steel:

\*   \*   \*   \*   \*   \*

    Columns, pillars, posts, beams, girders, and similar structural units:
      Not in part of alloy iron or steel:

| | |
|---|---|
| 652.93 | Cast-iron (except malleable cast-iron) articles, rough or advanced ................. [2] |

\*   \*   \*   \*   \*   \*

Illuminating articles and parts thereof, of base metal:

| | |
|---|---|
| 653.30 | Incandescent lamps designed to be operated by propane or other gas, or by compressed air and kerosene or gasoline .............. [3] |
| | Other: |
| 653.35 | Table, floor and other portable lamps for indoor illumination, of brass ................. \* \* \* |
| | Other: |
| 653.37 | Of brass ................. \* \* \* |
| 653.39 | Other ................. 19% ad val. |

The questions considered by the Customs Court were: 1) whether the lamp "stems" were properly classifiable under items 652.-93, 653.30 or 653.39, and 2) whether the remainder of the lamp parts were classifiable under items 653.30 or 653.39.

3. Under item 653.30, the rate of duty for articles entered in 1968 is 9% ad valorem; for articles entered in 1970, the rate of duty is 7% ad valorem; for articles entered in 1971, the rate of duty is 6% ad valorem.

In addition to reviewing those issues, we must also determine whether we have jurisdiction to hear the cross-appeal.

## OPINION

### I.

■ The United States argues that we lack jurisdiction to consider the cross-appeal. The argument is based on the assumption that a cross-appeal is no more than a separate appeal undertaken by one of the parties below. The syllogism continues that since the time limit for filing appeals is 60 days[4] after the entry of the decision of the Customs Court, and Bruckmann filed notice of cross-appeal 68 days after said entry, the separate appeal was untimely and this court lacks jurisdiction over the appeal. We do not agree. The statute gives us jurisdiction to review "any judgment or order of the Customs Court" once a proper application for such review is filed in the office of the clerk. Of course, only those parties to a proceeding in the Customs Court who appeal are able to improve their legal position.[5] While our rules do not, of course, provide for appeals or cross-appeals, they do contemplate cross-appeals;[6] consequently, Rule 1.4(a),[7] making the Federal Rules of Appellate Procedure applicable in this court in certain situations is pertinent here. Rule 4(a) of the Federal Rules of Appellate Procedure states, in part, that "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed." The cross-appeal was timely filed. Consequently, the cross-appeal is properly before us.

### II.

■ Nonetheless, Bruckmann's argument in the cross-appeal that the stems of the lamps should be classified under item 652.93 is not persuasive. This classification falls under the dominant heading (652.92 TSUS) "Columns, pillars, posts, beams, girders and similar structural units." These articles must be parts of structures. A complete definition of "structural" or "structure" is not to be found. An adequate point of departure is found in *Simon, Buhler & Baumann (Inc.) v. United States*, 8 Ct.Cust. Appls. 273, 276, T.D. 37537 (1918), as follows:

> Ordinarily speaking, "structure" carries with it the idea of size, weight, and strength, and it has come to mean any-

---

4. 28 U.S.C. § 2601 states:

§ 2601. Appeals from Customs Court decisions

(a) A party may appeal to the Court of Customs and Patent Appeals from a final judgment or order of the Customs Court within sixty days after entry of the judgment or order.

(b) An appeal is made by filing in the office of the clerk of the Court of Customs and Patent Appeals a notice of appeal which shall include a concise statement of the errors complained of. A copy of the notice shall be served on the adverse parties. When the United States is an adverse party, service shall be made on the Attorney General and the Secretary of the Treasury or their designees. Thereupon, the Court of Customs and Patent Appeals shall order the Customs Court to transmit the record and evidence taken, together with either the findings of fact and conclusions of law or the opinion, as the case may be.

(c) The Court of Customs and Patent Appeals may affirm, modify, vacate, set aside, or reverse any judgment or order of the Customs Court lawfully brought before it for review, and may remand the cause and direct the entry of an appropriate judgment or order, or require such further proceedings as may be just under the circumstances. The judgment or order of the Court of Customs and Patent Appeals shall be final and conclusive unless modified, vacated, set aside, reversed, or remanded by the Supreme Court under section 2106 of this title. As amended June 2, 1970, Pub.L. 91–271, Title I, § 103, 84 Stat. 275.

5. See *Langnes v. Green*, 282 U.S. 531, 538, 51 S.Ct. 243, 75 L.Ed. 520 (1931).

6. Consider the reference to cross-appeals in rules 5.6(a), 5.9(g) and 5.12(e) of this court.

7. Rule 1.4(a) of this court provides:

(a) *Federal Rules of Appellate Procedure.* The Federal Rules of Appellate Procedure shall govern any practice or procedure not specifically covered by these rules.

thing composed of parts capable of resisting heavy weights or strains and artificially joined together for some special use.

In *United States v. Humble Oil & Refining Co., et al.,* 46 CCPA 138, 140, C.A.D. 717 (1959), we indicated "that the word 'structures,' is not limited to such erections as buildings, bridges, and edifices." In *Laurence Myers Scaffolding Co. v. United States,* 57 Cust.Ct. 333, 339, C.D. 2809, 259 F.Supp. 874, 879 (1966), "bridge overhang shores, highway shores, and building shores" were all found to serve a purpose similar to the articles mentioned in the TSUS item. Therefore, bridges and highways are considered to be statutory "structures." In *J. Ray McDermott & Co. v. United States,* 69 Cust.Ct. 197, C.D. 4394, 354 F.Supp. 280 (1972), an offshore oil well drilling platform was found to be a "structure."

Clearly, none of these structures could be analogized to the lamp parts here in issue. We agree that lamp "stems" are not parts of structures within the meaning of the heading above item 652.93.

### III.

We do not agree with the holding of the Customs Court that the lamp parts in issue are properly classifiable under item 653.30 rather than under the remainder or "basket" item 653.39.

■ It is fairly well-settled law that an *eo nomine*[8] provision which does not specifically provide for parts does not include parts. An example is found in *Robertson v. Gerdan,* 132 U.S. 454, 458–9, 10 S.Ct. 119, 120, 33 L.Ed. 403 (1889), in which the Supreme Court stated: "If Congress had intended * * * to impose the same duty on parts of musical instruments which it imposed on musical instruments, it would have been easy to impose that duty on

'musical instruments of all kinds, and parts of the same.' "

Similarly, in *United States v. Schoverling,* 146 U.S. 76, 82, 13 S.Ct. 24, 36 L.Ed. 892 (1892), the Supreme Court refused to permit the imposition of duties on parts of breech-loading shotguns under an *eo nomine* provision specifically for "breech-loading shotguns" (but containing no mention of parts).

This court, in *United States v. Lyons Transport,* 45 CCPA 104, C.A.D. 681 (1958), found that parts of typewriters, specifically type, were not dutiable under the *eo nomine* provision for typewriters.

While apparently not disagreeing with this general rule, the Customs Court appears to consider our decision in *Velan Steam Spec. & Velan Valve Corp. v. United States,* 420 F.2d 1399, 57 CCPA 58, C.A.D. 976 (1970), to carve a significant exception out of it. *Velan* should not be construed in as broad a manner as has been done by the Customs Court. In *Velan,* the merchandise (parts of "hand-operated and check" valve devices) was classified under item 680.22, TSUS. The importer/appellant urged that the merchandise consisted only of parts and should have been classified under item 680.27.

The pertinent provisions of the TSUS (as existing at the date of entry) read as follow:

| | | |
|---|---|---|
| | Taps, cocks, valves, and similar devices, however operated, used to control the flow of liquids, gases, or solids, all the foregoing and parts thereof: | |
| | Hand-operated and check: | |
| 680.20 | Of copper . . . . . . . . . . . . . . | * * * |
| 680.22 | Other . . . . . . . . . . . . . . . . | 22.5% ad val. |
| | Other: | |
| 680.25 | Ballcock mechanisms, and parts . . . . . . . . . . . . . . . . | * * * |
| 680.27 | Other . . . . . . . . . . . . . . . . | 10% ad val. |

The entry denominated "hand-operated and check" is *adjectival* in form. It can do

---

**8.** The term *"eo nomine"* refers to the description of a "commodity by a specific name, usual-ly one well known to commerce." See R. Sturm, *A Manual of Customs Law* 215 (1974).

no more than modify the *noun* or *nouns* preceding it in the hierarchy of the table. The nouns are "[t]aps, cocks, valves * * and parts thereof." In *Velan,* the parts travel with the whole to the adjective below. But sight should not be lost of the fact that those adjectival item denominations are *not eo nomine* provisions. Sections 680.22 and 680.27 do *not* name anything but only qualify something previously named.

We do not consider *Velan* to be erosive of the general rule regarding *eo nomine* provisions and parts.

■ In the TSUS provisions of the case at hand, the general heading recites "articles and parts" but the subheading argued by Bruckmann to be proper (653.30) is *not* adjectival in form and cannot fall under the rationale of *Velan.* That item is an *eo nomine* provision and, by the general rule, does not include parts. The only other item under which the lamp parts in issue can be classified is 653.39. And there they belong.

An accurate analysis of the passdown of a "parts" provision is found in the United States' Brief:

Inferior headings of the *Velan*-type (*i. e.* containing no noun within them) may be proliferated *ad infinitum* under a main (superior) heading covering "parts" and the headings of each succeeding rank will all encompass "parts" under the implicit language "all the foregoing." [56] However,

[56] The limitation engrafted at each stage of such a breakdown runs in terms of *characteristics* of products rather than *identification* of products.

ever, once an inferior heading of the *eo nomine* (or class designation) type intervenes at any stage of a breakdown without a specification of "parts," neither that heading, nor any succeeding headings *indented under and subordinate to it in rank,* may be construed to include such "parts," whether the indented headings be of the *eo nomine* or the *Velan*-type. [57]

[57] In other words, a limitation, in the form of an *eo nomine* breakout from a heading of

superior rank, cannot be *reversed* by an inferior indented breakdown (any more than a *Velan*-type can be), for that would offend the plainly stated rule that no inferior headings can *expand* the scope of that from which they were carved (Rule 10(c)(i)). This rule is as applicable to inferior headings under a main heading which *does* encompass "parts" as it is to a main (superior) heading *not* encompassing "parts"—from the latter, *nothing* which includes "parts" can be carved.

The presence of a "parts" provision in one *eo nomine* type heading does not, however, preclude any inferior headings of *coordinate* rank from *omitting* such a provision, in which event such parts fall to the coordinate residual clause.

*Summary*

We hold that all of the "lamp parts" in issue were properly classified by the Customs Service under item 653.39.

The United States' motion for summary judgment should have been granted and Bruckmann's denied. The order of the Customs Court directing reliquidation is *reversed.*

LANE, Judge, concurring.

While I find myself in complete agreement with the majority, I believe it necessary to discuss two additional points regarding part III of the opinion.

First, in *Velan,* as correctly noted by the majority, the inferior heading in question (Hand-operated and check) contained no noun. Significantly, the absence of a noun not only renders the provision unintelligible in and of itself, but implies that it must be read in conjunction with the nouns (Taps, cocks, valves, and similar devices, however operated, used to control the flow of liquids, gases, or solids, all of the foregoing and parts thereof) of the immediately superior heading. In contradistinction, here the inferior heading (Incandescent lamps designed to be operated by propane or other gas, or by compressed air and kerosene or gasoline) contains a noun, "lamps." As such, resort to the nouns of the immediately

superior heading is unnecessary to render this inferior heading intelligible.

Second, it is clear that Congress did not intend that provision for parts in superior headings be automatically inferred into all immediately inferior headings. This can be seen from the fact that in at least 108 sections of the TSUS, Congress considered it necessary to specifically provide for parts in a superior heading and then again in the immediately inferior heading.* I would hesitate to conclude that Congress was merely being redundant 108 times.

MILLER, Judge, dissenting in part.

I agree that the "lamp parts" in issue were properly classified by the Customs Service under item 653.39 and that the Government's motion for summary judgment should have been granted by the Customs Court. The two "additional points" made by Judge Lane in his concurring opinion are persuasive.

Bruckmann's cross-appeal should be dismissed as untimely under 28 U.S.C. § 2601. Rule 4(a) of the Federal Rules of Appellate Procedure *does not apply to appeals from the Customs Court,* but specifically applies to appeals "from a district court," thus:

(a) *Appeals in Civil Cases.* In a civil case . . . in which an appeal is permitted by law as of right *from a district court* to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days of the date of the entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days of such entry. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days

of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this subdivision, whichever period last expires.

.   .   .   .   .   .

Upon a showing of excusable neglect, *the district court* may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision. Such an extension may be granted before or after the time otherwise prescribed by this subdivision has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the court shall deem appropriate. [Emphasis added.]

Therefore, the matter quoted by the majority opinion relating to the 14-day period following the filing of the first notice of appeal is not applicable to an appeal *from the Customs Court.*

Even though, as the majority opinion states, the CCPA rules "contemplate cross-appeals," a CCPA rule cannot enlarge the statutory period provided by 28 U.S.C. § 2601. Fed.R.App.P. 26(b); *Seneca Grape Juice Corp. v. United States,* 492 F.2d 1235, 61 CCPA 118 (1974).

---

* See for example TSUS items 660.25; 660.30; 660.75; 661.12; 666.20; 674.60; 674.80; 683.-10; 683.70; 684.62.